## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Randolph Hospital, Inc. | ) | |
| d/b/a Randolph Health, | ) | Case No. 20-10247 |
| | ) | |
| Debtors.[1] | ) | |
| _____ | ) | |
| | ) | |
| Louis E. Robichaux, IV, as | ) | |
| Liquidation Trustee of Randolph | ) | |
| Health Liquidation Trust, | ) | Adv. Pro. No. 22-02002 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The Moses H. Cone Memorial | ) | |
| Hospital Operating Corporation d/b/a/ | ) | |
| Cone Health, Moses Cone Physician | ) | |
| Services, Inc. d/b/a Triad Hospitalists, and | ) | |
| and American Healthcare Systems, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This adversary proceeding comes before the Court upon (1) the motion to

dismiss and supporting brief filed by The Moses H. Cone Memorial Hospital

Operating Corporation d/b/a/ Cone Health ("Cone Health") and Moses Cone

Physician Services, Inc. d/b/a Triad Hospitalists ("MCPS") (collectively,

---

[1] The Debtors are Randolph Hospital, Inc. d/b/a Randolph Health, Case No. 20-10247; Randolph Specialty Group Practice, Case No. 20-10248; and MRI of Asheboro, LLC d/b/a Randolph MRI Center, Case No. 20-10249.

1

"Defendants"[2]), seeking to dismiss numerous claims in the Complaint under Federal Rule of Civil Procedure 12(b)(6), as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted, and (2) the Plaintiff's motion for leave to amend the Complaint. After consideration of the record and for the reasons stated herein, the Court will grant in part and deny in part the Defendants' motion to dismiss and will grant the Plaintiff's motion for leave to amend.

## Procedural History

On February 8, 2022, Louis E. Robichaux, IV, in his capacity as the Liquidation Trustee for Randolph Health Liquidation Trust ("Plaintiff"), initiated this adversary proceeding by filing a Complaint against Cone Health, MCPS, and American Healthcare Systems, LLC ("AHS") (Docket No. 1).[3] In addition to objecting to certain claims filed or asserted by Cone Health and AHS in the Debtors' underlying bankruptcy case, the Plaintiff also seeks (1) avoidance of transfers under provisions of the Bankruptcy Code; (2) avoidance of transfers under provisions of the North Carolina Uniform Voidable Transactions Act, N.C. Gen. Stat. § 39-23.1 *et seq.*; and damages stemming from (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) breach of fiduciary duty; (6) constructive fraud by a fiduciary; (7) and unfair and deceptive trade practices.

---

[2] Throughout this memorandum opinion, "Defendants" will only refer to Cone Health and MCPS for simplicity's sake as the claims against American Healthcare Systems, LLC have already been dismissed in accordance with a settlement agreement with the Plaintiff. *See* Docket No. 58; *see also* Order Granting Motion for Settlement and Compromise, Case No. 20-10247, Docket No. 1240.

[3] Unless otherwise indicated, record citations refer to docket entries in Adversary Proceeding No. 22-02002, rather than the underlying bankruptcy case, Case No. 20-10247.

After the Court granted the Defendants an extension of time to answer or otherwise respond to the Complaint, the Defendants filed a motion to dismiss and a supporting brief (Docket Nos. 48, 49, together the "Motion"). The Motion seeks dismissal of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Eleventh, Twelfth, and Thirteenth Causes of Action. The Plaintiff filed an Objection to the Motion (Docket No. 52, the "Objection"), in which he argues against dismissal of the Complaint and, in the event the Motion is granted, requests leave to amend the Complaint. The Court held a hearing on June 30, 2022, at which Jody A. Bedenbaugh and Jason L. Hendren appeared on behalf of the Plaintiff and Thomas W. Waldrep, Jr., and Kelly A. Cameron appeared on behalf of the Defendants. After hearing arguments from each side, the Court took the matter under advisement.

APPLICABLE LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) should be granted as to a particular cause of action if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations must "be enough to raise a right to relief above the speculative level" and nudge the plaintiff's claim "across the line from conceivable to plausible." *Id.* at 555, 570. A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

To determine plausibility, all well-pleaded facts set forth in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" will not constitute well-pleaded facts necessary to withstand a motion to dismiss. *Id.* In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Assuming the complaint meets the plausibility standard, the plaintiff is not required "to also rebut other possible explanations for the conduct alleged." 2 MOORE'S FEDERAL PRACTICE § 12.34(1)(b) (2022); *accord Houck v. Substitute Tr. Servs.*, 791 F.3d 473, 484 (4th Cir. 2015) (holding that "a plaintiff need not demonstrate . . . that alternative explanations are less likely" in order to survive a motion to dismiss). On the other hand, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." 2 MOORE'S FEDERAL PRACTICE § 12.34(4)(a) (2022); *see also EEOC v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 343 (M.D.N.C. 2012) (finding a plaintiff must allege facts

sufficient to state each element of the claim) (citing *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003)).

FACTUAL BACKGROUND AND ALLEGATIONS

The following facts are alleged in the Complaint and taken as true for purposes of this Motion:

1.  In 2015, after years of struggling, Randolph Health decided that it would need to partner with a larger healthcare system with more capital and began searching for such an organization (Docket No. 1, ¶¶ 18–19). By 2016, Randolph Health was in default of its debt covenants under a term loan with Bank of America ("BOA") (Docket No. 1, ¶ 40).

2.  On May 24, 2016, Randolph Health entered into the Management Services Agreement ("MSA") with Cone Health. As part of the MSA, Randolph gave "Cone Health the full power, authority, and responsibility for management of Randolph [Health]" (Docket No. 1, ¶¶ 20–21). The Plaintiff attaches the MSA to the Complaint as Exhibit A.

3.  The Complaint alleges Cone Health breached numerous requirements under Section 3 of the MSA (Docket No. 1, ¶ 37), including the following:

    a.  "Section 3(a): Section 3(a) requires Cone Health to hire, employ, and direct a CEO, COO, and CFO for Randolph Health. Cone Health only partially satisfied this requirement, with CEO Angie Orth being the lone executive provided by Cone Health for a lengthy period of time. When former CEO Skip Marsh left Randolph Health, Cone Health failed to provide a successor CFO, leaving Randolph to rely on its former Controller to take on CFO duties, as well as outside financial advisors. This lack of leadership greatly contributed to deficiencies in Randolph Health's financial accounting department. Further, Section 3(a) requires Cone Health to direct the Key Personnel, but Cone

5

Health did not provide direction to Randolph's CFO and CEO in recent years.

b.  "Section 3(b): Cone Health failed to satisfy Section 3(b), which requires Cone Health to provide corporate managerial resources necessary to provide the services under the MSA. Randolph's management has been thinly staffed for years, without adequate resources for a healthcare system of its size. In particular, Cone Health did not provide adequate long-term and strategic planning or adequate managerial resources in connection with Randolph's efforts to find a long-term affiliation transaction.

c.  "Section 3(g): Section 3(g) obligates Cone Health to oversee the development of a physician recruitment plan for Randolph. Cone Health did not satisfy this obligation. Cone Health included Randolph in an analysis done by an outside advisor to assess physician and provider needs, but Cone Health never provided any recruitment plan – no assistance or work product was ever provided on how Randolph should utilize its resources and develop a proactive plan to recruit physicians and other providers to meet the identified needs. In short, Cone Health did not provide guidance or assistance on how to fill the gaps. As referenced above, Cone Health actually recruited physician groups away from Randolph, further exacerbating the problem.

d.  "Section 3(i): Section 3(i) requires Cone Health provide annual operating budgets, capital expenditures budgets, and cash flow budgets to Randolph for approval by its board. Cone Health did not provide budgets for years" (Docket No. 1, Ex. A, § 3).

4.  On February 28, 2017, Cone Health entered into an agreement with Randolph Health and BOA under which Cone Health agreed to make payments to BOA if Randolph Health was unable to do so (Docket No. 1, ¶ 40).

5.  On May 23, 2017, Randolph Health also entered into a Professional Services Agreement ("PSA") with Cone Health's affiliate, MCPS (Docket No. 1, ¶ 29). Cone Health also entered into a Letter of Intent ("LOI") with Randolph Health, under which Cone Health began negotiations with

Randolph Health to fully integrate it into Cone Health's system, become its sole parent, and assume or guarantee all of Randolph Health's long-term debt (Docket No. 1, ¶ 24). These negotiations with Cone Health were exclusive, and Randolph Health was prohibited from pursuing an affiliation transaction with another party during the LOI period (Docket No. 1, ¶ 24).

6.  Then, in May 2018, Cone Health withdrew from integration negotiations with Randolph Health (Docket No. 1, ¶ 26) and allowed the agreement to make BOA payments expire (Docket No. 1, ¶ 40).

7.  Under the MSA, the PSA, and other obligations, Randolph Health made numerous transfers to Cone Health and MCPS; the alleged transfers to Cone Health date from September 16, 2016 to March 5, 2020, and the alleged transfers to MCPS date from October 17, 2017 to March 5, 2020. Lists of all alleged transfers are attached to the Complaint as Exhibit B and Exhibit C. The Complaint summarizes certain groups of transfers as follows:[4]

    a.  "Transfers totaling not less than $2,986,245.08 to Cone Health for management fees ('Management Fee Payments') under the MSA within four years of the Petition Date;

    b.  "Transfers totaling not less than $1,186,245.08 to Cone Health for Management Fee Payments under the MSA within two years of the Petition Date;

    c.  "Transfers totaling not less than $3,070,864.08 to Cone Health for Management Fee Payments and expense reimbursement under the

---

[4] The Court will adopt the defined terms in Paragraph 30 of the Complaint for the transfers made to the Defendants.

MSA and other obligations within one year of the Petition Date ('Cone Health One Year Payments'); and

d.    "Transfers totaling not less than $2,516,574.00 to MCPS for amounts due under the Professional Services Agreement within one year of the Petition Date ('MCPS One Year Payments')" (Docket No. 1, ¶ 30).

8.    Plaintiff alleges that as a result of actions by Cone Health, Randolph Health's net assets according to book values decreased from $56,859,312.00 at the time it entered into the MSA to $31,211,361.00 by the time of its bankruptcy petition (Docket No. 1, ¶ 41).

9.    Additionally, Randolph Health's cash flow dropped from $6,567,210.00 in fiscal year 2015 to negative $2,408,240.00 in fiscal year 2017, negative $653,675.00 in fiscal year 2018, $3,989,045.00 in fiscal year 2019, and negative $18,738.00 in fiscal year 2020 (Docket No. 1, ¶ 41).[5]

10.    The Complaint alleges that by May 2018, Randolph Health "understood that it was very likely insolvent" but was able to remain operational for two more years "by successfully implementing a cost savings and margin improvement plan" (Docket No. 1, ¶ 42).

11.    On March 6, 2020 (the "Petition Date"), the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code (Docket No. 1, ¶ 10).

12.    On October 8, 2020, Randolph Health entered into an Asset Purchase Agreement with AHS for substantially all of Randolph Health's assets, and on November 3, 2020, the Bankruptcy Court entered an order authorizing the sale (Docket No. 1, ¶ 13). Following the negotiation of various

---

[5] The Complaint does not identify the starting date for Randolph Health's fiscal year.

amendments, Randolph Health filed a motion for approval of an amended

sale transaction, and on June 4, 2021, the Bankruptcy Court entered a

supplemental sale order (Docket No. 1, ¶ 14).

Further factual allegations are set forth as needed in the Discussion below.

Discussion

i. <u>First Cause of Action: Avoidance under 11 U.S.C. § 547</u>

The Plaintiff alleges that the Cone Health One Year Payments and MCPS

One Year Payments are preferential transfers under 11 U.S.C. § 547(b) and seeks to

avoid them under the authority provided in that section. Under § 547(b), the trustee

may, "based on reasonable due diligence in the circumstances of the case and taking

into account a party's known or reasonably knowable affirmative defenses under

subsection (c)," avoid any transfer

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The Defendants argue that the Plaintiff's claim under § 547 fails because the elements of antecedent debt and insolvency are not adequately pleaded. The Defendants also argue that the Plaintiff has not alleged facts demonstrating that he brought this claim after conducting reasonable due diligence in accordance with § 547(b)'s prefatory statement.

*a) Antecedent Debt*

To avoid a preferential transfer, a plaintiff must show that the transfer was made for, or on account of, an antecedent debt. 11 U.S.C. § 547(b)(2). At the motion to dismiss stage, that means the plaintiff must allege "facts regarding the nature and amount of the antecedent debt which would render plausible the assertion that a transfer was made for or on account of such antecedent debt." *Ivey v. ES2, LLC* (*In re ES2 Sports & Leisure, LLC*), 544 B.R. 833, 844 (Bankr. M.D.N.C. 2015) (cleaned up). The Fourth Circuit uses a "common sense approach" to determine whether a transfer is made on account of an antecedent debt, considering whether the creditor would be able to assert a claim (interpreted broadly) against the estate if the repayment had not been made. *Smith v. Creative Fin. Mgmt., Inc.* (*In re Virginia-Carolina Fin. Corp.*), 954 F.2d 193, 197 (4th Cir. 1992); *see Conti v. Coastal Warranty, LLC* (*In re NC & VA Warranty Co.*), 556 B.R. 182, 197 (Bankr. M.D.N.C. 2016). To permit this determination, the plaintiff must assert the nature and amount of the antecedent debt. *Angell v. Ber Care, Inc.* (*In re Caremerica, Inc.*), 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009). Conclusory allegations reciting the

antecedent debt element in § 547(b)(2) without sufficient factual assertions will fail. *See ES2*, 544 B.R. at 844–45; *Ber Care*, 409 B.R. at 751.

The Defendants argue that the Plaintiff has not alleged enough details for certain transfers within the one-year lookback period, such as "timing of payments, invoicing, and performance during the preference period" (Docket No. 49, p. 7). Specifically, the Defendants argue that the claim should be dismissed as to transfers totaling $1,510,933.70 to Cone Health and $1,772,236.00 to MCPS because these transfers are not identified with respect to any invoice, and thus not properly alleged to have been made on account of an antecedent debt. *Id.*[6] But the Court has not found nor have the Defendants pointed to any caselaw holding that invoice information must be alleged at this stage. While courts generally look for information regarding the recipient, date, and amount of each transfer, *ES2*, 544 B.R. at 844; *Beaman v. Barth* (*In re AmerLink, Ltd.*), No. 10-00164, 2011 WL 864953, at *3–4 (Bankr. E.D.N.C. Mar. 11, 2011), the Defendants are incorrect in asserting that a plaintiff is required to identify invoices or invoice numbers that relate to each transfer, much less allege the billing practices of a transferee, to survive a motion to dismiss.

Instead, the Court finds the Plaintiff has adequately pleaded this element by alleging that the Cone Health One Year Payments and MCPS One Year Payments were made on account of pre-existing obligations under Randolph Health's

---

[6] The Defendants do not appear to contest the antecedent debt element as to the remaining transfers alleged in the First Cause of Action, for which the Plaintiff does provide corresponding invoice information (*see* Docket No. 1, Ex. B; Ex. C).

agreements with the Defendants and providing detailed information about the transfers. With respect to Cone Health, the Plaintiff alleges that the transfers he lists in Exhibit B as Cone Health One Year Payments were made pursuant to obligations under the MSA and other contracts with Cone Health and these obligations existed prior to their respective transfers. Similarly, the Plaintiff alleges that the transfers he lists in Exhibit C as MCPS One Year Payments were made pursuant to obligations under the PSA with MCPS and these obligations existed prior to their respective transfers. Exhibits B and C provide adequate information as to the recipient, date, and amount of each transfer. Together, the Plaintiff's factual allegations and the Exhibits lead to a plausible inference that the listed transfers were made on account of existing obligations stemming from the MSA, PSA, or other agreements.

*b) Insolvency under the Bankruptcy Code*

The avoidance of a preferential transfer under § 547(b) is contingent on the debtor being insolvent on the date of the transfer. *Ber Care*, 409 B.R. at 752 (citing 11 U.S.C. § 547(b)(3)). Under 11 U.S.C. § 101, a debtor is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32)(A). Courts in the Fourth Circuit typically use the "balance sheet" test to determine insolvency: "the debtor is insolvent when the sum of all the debtor's liabilities is greater than the sum of all its assets, at a fair valuation, at the time of the transfer." *Lanik v. Smith* (*In re Cox Motor Express of Greensboro, Inc.*), No. 15-02023, 2017 WL 1207517, at *7 (Bankr. M.D.N.C. Jan. 27,

12

2017) (cleaned up). A fair valuation of the debtor's assets may be determined based on fair market value or liquidation value, depending on whether the debtor is operating as a going concern or is "on its deathbed." *Id.* Courts do not ordinarily rely on book values as an accurate reflection of fair market value, but they can be useful data from which a court may draw inferences about a debtor's insolvency. *Heilig-Meyers Co. v. Wachovia Bank, N.A.* (*In re Heilig-Meyers Co.*), 319 B.R. 447, 458, 468 (Bankr E.D. Va. 2004), *aff'd,* 328 B.R. 471 (E.D. Va. 2005). Lastly, a debtor is presumed to be insolvent within the 90-day period prior to the petition being filed, 11 U.S.C. § 547(f), but this presumption does not apply to the rest of the one-year lookback period for preferential transfers made to insiders. *See Ber Care*, 409 B.R. at 752; *Heilig-Meyers*, 319 B.R. at 468 n.12.

The Defendants contend that the Plaintiff's own allegations undermine a finding that balance sheet insolvency under § 101(32)(A) has been adequately pleaded. For example, the Plaintiff alleges that Randolph Health's net assets according to book values were $56.8 million when it entered into the MSA on May 24, 2016 with Cone Health but decreased to $31.2 million by the Petition Date. Despite the substantial decrease, Randolph Health's assets remained higher than its liabilities. The Defendants also argue that the allegations surrounding Randolph Health's predominantly positive cash flow under EBIDA[7] for fiscal years 2019 and 2020 are not adequate indicators of insolvency.

---

[7] Based on its review of a leading online financial dictionary, the Court will reasonably assume the Plaintiff means "earnings before interest, depreciation, and amortization." *See* Will Kenton, *EBIDA*, INVESTOPEDIA, www.investopedia.com/terms/e/ebida.asp (last updated June 30, 2021).

The Plaintiff believes he has satisfied the element of insolvency by alleging that Randolph Health (1) was in default of its term loan with BOA before 2016, (2) "understood it was very likely insolvent" by May 2018, (3) was unable to find a buyer and avoid bankruptcy, and (4) sold substantially all of its assets to AHS under the Sale and Supplemental Sale Orders for $10.2 million (Docket No. 52, p. 8). As further evidence of insolvency, the Plaintiff alleges for the first time in its Objection that Cone Health unsuccessfully bid $2.3 million to purchase Randolph Health (Docket No. 52, p. 8).

As a preliminary matter, the Court will not consider the amount of Cone Health's bid or the contents of the sale orders at this stage. Because neither the fact nor the amount of Cone Health's bid was alleged in the Complaint, the Court will not use them to assess the sufficiency of the claim. *See Pham v. Deutsche Bank Nat. Tr. Co.*, 583 F. App'x 216, 217 (4th Cir. 2014) ("[T]his court generally follows the 'Four Corners Rule,' whereby a court may consider the complaint itself and any documents that are attached to it." (cleaned up)). Without allegations in the Complaint about the purchase price—and how it translates to fair market value—or the total liabilities, such that the two numbers could be compared for purposes of the balance sheet test, the Court will not consider the information addressed only in the parties' briefing.

The Court finds the Plaintiff has failed to adequately plead that Randolph Health was insolvent before the 90-day presumptive period. While the Court acknowledges that book values are rarely equivalent to the fair market value of a

14

debtor's assets, the Plaintiff's own allegations of positive net assets according to book values on the dates of the transfers are the only allegations directly relevant to the relatively simple balance sheet test and do not lead to an inference that the Plaintiff was balance sheet insolvent. On the other hand, the Plaintiff's allegations of negative cash flow are separate from the balance sheet test and, as presently stated, not useful in determining insolvency at discrete points in time.

Nevertheless, for purposes of the Motion, the Court will grant the statutory presumption that Randolph Health was insolvent during the 90-day period before the Petition Date. While the Defendants correctly note that the presumption is rebuttable, they wrongly assert that the presumption has been rebutted by the Plaintiff's own allegations (Docket No. 49, p. 9). Even if the Plaintiff's own allegations of positive net assets could be used to rebut the presumption of insolvency at the motion to dismiss stage, the Court finds the allegations as to book values do not do the Defendants' work for them because book values generally cannot be used to rebut a presumption of insolvency. *See Lids Corp. v. Marathon Inv. Partners, L.P.* (*In re Lids Corp.*), 281 B.R. 535, 543 (Bankr. D. Del. 2002) (concluding that that book values based on accounting principles are not controlling in insolvency determinations and are insufficient to rebut a presumption of insolvency).[8] Essentially, the Plaintiff's pleadings help neither him nor the Defendants.

---

[8] Further, the Defendants cannot provide such evidence anew for the Court's consideration at the motion to dismiss stage. *See Carn v. Heesung PMTech Corp.* (*In re SpecAlloy Corp.*), 579 B.R. 282, 296 (M.D. Ala. 2017) ("[The § 547(f) presumption is rebuttable, but rebutting the presumption

*c) Due Diligence*

Section 547(b) stipulates that a "trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid [certain transfers]." 11 U.S.C. § 547(b). This introductory language was added and made effective in 2020 by the Small Business Reorganization Act of 2019, Pub. L. No. 116-54 § 3(a), 133 Stat. 1079. Due to its recent enactment, little caselaw has developed interpreting this provision, and none in the Fourth Circuit. Among those courts to consider it, a split has developed as to whether the provision constitutes a new element of the § 547(b) cause of action or if the absence of due diligence is an affirmative defense that should not be considered at the motion to dismiss stage. *Compare Husted v. Taggart* (*In re ECS Refining, Inc.*), 625 B.R. 425, 454 (Bankr. E.D. Cal. 2020) (holding it is an element), *with Insys Liquidation Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP* (*In re Insys Therapeutics, Inc.*), No. 21-50359, 2021 WL 5016127, at *3 (Bankr D. Del. Oct 28, 2021) (noting the issue is unclear), *and Faulkner v. Lone Star Car Brokering, LLC* (*In re Reagor-Dykes Motors, LP*), No. 20-05028, 2021 WL 2546664, at *2 (Bankr. N.D. Tex. June 18, 2021) (same). Many courts have avoided the issue by determining that, whether or not the provision does create a new element, the plaintiff's allegations were sufficient to infer that due diligence under the circumstances had been conducted. *See, e.g.*, *Insys*, 2021 WL 5016127, at *3; *Faulkner*, 2021 WL 2546664, at *2–3; *Sommers v. Anixter, Inc.* (*In*

---

requires the presentation of evidence, which a court is not permitted to consider on a motion to dismiss.").

*re Trailhead Eng'g LLC*), No. 18-32414, 2020 WL 7501938, at *7 (Bankr. S.D. Tex. Dec. 21, 2020).

Here, the Plaintiff has adequately pleaded reasonable due diligence as to those transfers within the 90-day period before the Petition Date. The Plaintiff has done more than recite the introductory sentence of § 547(b) and alleges that he has determined he may avoid the subject transfers "after reviewing his records" and evaluating the reasonably knowable affirmative defenses with due diligence (Docket No. 1, ¶ 32). The Plaintiff also demonstrates sufficient due diligence under the circumstances of this case by, among other things, attaching wire and check records of the alleged transfers made to the Defendants, attaching the MSA contract between Randolph Health and Cone Health, and describing the contractual relationship between Randolph Health and the Defendants. *See Anixter*, 2020 WL 7501938, at *7. While the Defendants contend that the Plaintiff did not consider several defenses and proceed to argue the merits of those defenses in their Motion (Docket No. 49, pp. 10–13), it is inappropriate at this stage for the Court to consider these defenses in detail or require the Plaintiff to plead around them. *See Insys*, 2021 WL 5016127, at *3 ("[T]here is no requirement that a plaintiff plead around potential affirmative defenses.").

For these reasons, the Court finds the Plaintiff has stated a claim for relief under § 547(b) for transfers made to the Defendants within the 90-day period before the Petition Date.

ii. <u>Second Cause of Action: Avoidance under N.C. Gen. Stat. § 39-23.5(b)</u>

The Plaintiff also alleges that the Cone Health One Year Payments and MCPS One Year Payments are voidable transfers to insiders under Section 39-23.5(b) of the North Carolina Uniform Voidable Transfers Act ("UVTA") and seeks to avoid them under the authority granted by 11 U.S.C. §§ 544 and 550.[9] Under § 544(b), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). Section 544(b)(1) does not itself provide a substantive cause of action but acts as a "procedural vehicle" for an action if other applicable law allows an unsecured creditor to void a transfer. *Cook v. United States* (*In re Yahweh Ctr., Inc.*), 27 F.4th 960, 964 (4th Cir. 2022). In the Second Cause of Action, the alleged applicable law is N.C. Gen. Stat. § 39-23.5(b), under which "a transfer made by a debtor is voidable as to a creditor whose claim arose [1] before the transfer was made to an insider [2] for an antecedent debt, [3] the debtor was insolvent at that time, and [4] the insider had reasonable cause to believe that the debtor was insolvent." N.C. Gen. Stat. § 39-23.5(b); *Haworth, Inc. v. Janumpally*, No. 5:17-CV-423, 2018 WL 3978173, at *5 (E.D.N.C. Aug. 20, 2018).

There is little caselaw interpreting the term "antecedent debt" with respect to the UVTA, but it appears the term carries the same meaning as in 11 U.S.C.

---

[9] In the Second, Fourth, Fifth, Seventh, and Eighth Causes of Action, the Plaintiff identifies 11 U.S.C. § 544(b) only in the heading of each claim, while he specifically states in full sentences that he seeks to recover the alleged transfers under § 550. The Court deems this sufficient to bring the claims within the ambit of § 544(b).

§ 547(b). *See, e.g., Estate of Hurst ex rel. Cherry v. Jones*, 750 S.E.2d 14, 20 (N.C. Ct. App. 2013) (finding an antecedent debt existed where payment was made in satisfaction of a pre-existing debt). Thus, the Plaintiff has adequately pleaded this element for the reasons previously stated.

Insolvency under the UVTA, on the other hand, is statutorily defined as the situation where "at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets." N.C. Gen. Stat. § 39-23.2(a). This definition is substantially similar to the balance sheet test utilized to assess claims under 11 U.S.C. §§ 547 and 548. In addition, a rebuttable presumption of insolvency is given for a "debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute." N.C. Gen. Stat. § 39-23.2(b).

For the reasons discussed above regarding insolvency under the Bankruptcy Code, the Plaintiff has failed to adequately plead that Randolph Health was balance sheet insolvent under the UVTA at any point during the one-year period before the Petition Date. Further, the Court agrees with the Defendants' unopposed contention that the Plaintiff has not triggered the presumption of insolvency under N.C. Gen. Stat. § 39-23.2(b) because he has failed to allege with sufficient specificity that Randolph Health was unable to pay its debts as they became due during the one-year period.

For these reasons, the Court finds the Plaintiff has failed to state a claim for relief under N.C. Gen. Stat. § 39-23.2(b).

### iii. <u>Third Cause of Action: Avoidance under 11 U.S.C. § 548</u>

In the Plaintiff's third claim, he seeks to avoid Management Fee Payments made to Cone Health within two years before the Petition Date under 11 U.S.C. § 548(a)(1)(B).[10] This provision authorizes the avoidance of a transfer of the debtor's property, made within two years before the debtor's petition, if the debtor "received less than reasonably equivalent value in exchange for such transfer" and either

> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B); *Angell v. Endcom, Inc.* (*In re Tanglewood Farms, Inc. of Elizabeth City*), 487 B.R. 705, 709 (Bankr. E.D.N.C. 2013). Of the four alternative elements regarding financial condition, the Plaintiff only alleges that Randolph Health was either insolvent on the date of the transfers or was undercapitalized. Cone Health argues that the Plaintiff has failed to adequately plead either element and has failed to allege sufficient facts that lead to a plausible inference that Cone

---

[10] The Plaintiff's Objection and the lack of any allegations regarding Randolph Health's fraudulent intent in executing the alleged transfers indicate that the Plaintiff is advancing a claim under this "constructive fraud" provision rather than a claim of "actual fraud" under § 548(a)(1)(A).

Health provided Randolph Health with "less than reasonably equivalent value" in exchange for the subject transfers.

### (a) Reasonably Equivalent Value

In determining whether reasonably equivalent value was given in exchange for a transfer or obligation, courts ask whether there was a "large or significant disparity between what the debtor gave and what it received in exchange." *Endcom*, 487 B.R. at 710. This inquiry has two parts: first, the court determines whether any value was received at all; second, if value was received, the court assesses whether such value was reasonably equivalent to the alleged transfer. *See* 5 COLLIER ON BANKRUPTCY ¶ 548.05(2)(a) (2022); *see also Endcom*, 487 B.R. at 710 (citing *Barber v. Golden Seed Co.* (*In re Ostrom-Martin, Inc.*), 129 F.3d 382, 387 (7th Cir. 1997)). At the motion to dismiss stage, a plaintiff is required to set forth factual allegations regarding the transfer in question and the value received in exchange. Adequate pleadings may include a "list of the alleged fraudulent transfers, identification of the consideration received by the transferee, and information concerning why the consideration was not equivalent in value." *Endcom*, 487 B.R. at 711 (quoting *Beaman v. Barth* (*In re AmerLink, Ltd.*), No. 10-00164, 2011 WL 1048848, at *3 (Bankr. E.D.N.C. Mar. 18, 2011)). Of relevance to this proceeding, allegations that inadequate professional services were rendered in exchange for payment have been found to satisfy this element. *See OHC Liquidation Tr. v. Credit Suisse First Boston* (*In re Oakwood Homes Corp.*), 340 B.R. 510, 525 (Bankr. D. Del. 2006).

Here, the Plaintiff has adequately pleaded that Randolph Health received less than equivalent value in exchange for the Management Fee Payments. The Plaintiff alleges that Cone Health breached numerous provisions of the MSA yet received in exchange the Management Fee Payments totaling almost $1.2 million identified in Exhibit B. From these allegations, it is reasonable to infer that the money Cone Health received was more than the "value" of the services it provided to Randolph Health. Nevertheless, Cone Health argues that the allegations of contractual breaches only "state the Plaintiff's opinion about a subjective issue or refer to a vague provision within the MSA without any specific information to define the breach itself or the harm allegedly caused thereby" (Docket No. 49, p. 17). This argument fails because the allegations contain sufficient factual content beyond the level of conclusory allegations, and they give Cone Health "fair notice" of the basis for the Plaintiff's assertion that Randolph received less than reasonably equivalent value. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a plaintiff need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"). Similarly, Cone Health's argument that, on the merits, Randolph Health actually paid Cone Health less than the precise amount due under the MSA during the two-year lookback period represents a defense that is more suited to consideration at a later stage of this proceeding.

### *(b) Insolvency under the Bankruptcy Code*

The Plaintiff alleges that Randolph Health was either insolvent on the date of the subject transfers or was undercapitalized. As with claims under § 547(b),

22

claims under § 548 are assessed using the definition of insolvency provided in § 101(32)(A) and the Fourth Circuit's balance sheet test. *See Angell v. Ber Care, Inc.* (*In Caremerica, Inc.*), 409 B.R. 737, 755–56 (Bankr. E.D.N.C. 2009). However, § 548 does not provide a presumption of insolvency.

For the reasons discussed above regarding insolvency for the claim under § 547, the Plaintiff has also failed to adequately plead that Randolph Health was balance sheet insolvent at any point during the two-year period before the Petition Date.

### *(c) Undercapitalization*

In the alternative, the Plaintiff alleges that Randolph Health was "engaged or about to engage in business for which its remaining property was unreasonably small" (Docket No. 1, ¶ 63). This so-called "undercapitalization" prong of § 548 refers to "an inability to generate sufficient profits to sustain operations and may be analyzed by objectively asking whether projections regarding sustained operations were reasonable." *Parker v. McClain* (*In re Parker*), No. 13-00055-8, 2015 WL 4747536, at *9 (Bankr. E.D.N.C. Aug. 10, 2015) (cleaned up). Courts primarily use a balance sheet inquiry to assess this factor but also analyze whether the debtor was in default on payment obligations or had no significant cash on hand. *See id.*; *Whitaker v. Mortg. Miracles, Inc.* (*In re Summit Place, LLC*), 298 B.R. 62, 74 (Bankr. W.D.N.C. 2002). The threshold for undercapitalization is high, and allegations that the debtor still had significant equity in property, despite some financial trouble, will not suffice. *See Mortg. Miracles*, 298 B.R. at 74.

23

Here, the Plaintiff fails to allege undercapitalization at any time during the two-year lookback period of § 548. The Plaintiff alleges that at all applicable times, Randolph Health had at least $31 million in net assets. The allegations that cash flow was negative at certain times within the lookback period do not lead to an inference that Randolph Health was unable to sustain operations when compared to the allegations of substantial net assets. Lastly, the Plaintiff does not allege that Randolph Health was unable to pay debts as they became due within the applicable lookback period.

For these reasons, the Court finds the Plaintiff has not stated a claim for relief under § 548(a).

iv. <u>Fourth Cause of Action: Avoidance under N.C. Gen. Stat. § 39-23.4(a)(2)</u>

The Plaintiff alleges that Management Fee Payments made to Cone Health within the four years before the Petition Date are constructively fraudulent under N.C. Gen. Stat. § 39-23.4(a)(2)[11] and seeks to avoid them under the authority granted by 11 U.S.C. § 544. Under N.C. Gen. Stat. § 39-23.4:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: …
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor

---

[11] As with the Third Cause of Action, the lack of any allegations regarding Randolph Health's fraudulent intent in executing the alleged transfers indicate that the Plaintiff is advancing a claim under this UVTA constructive fraud provision rather than a claim of actual fraud under § 39-23.4(a)(1).

> were unreasonably small in relation to the business or
> transaction; or
> b. Intended to incur, or believed that the debtor would
> incur, debts beyond the debtor's ability to pay as they
> became due.

N.C. Gen. Stat. § 39-23.4(a)(2); *accord Parker*, 2015 WL 4747536, at \*7–8. Because there is a dearth of North Carolina caselaw interpreting "reasonably equivalent value" or the undercapitalization prong, courts analyze these factors in the same way that they analyze them for claims under 11 U.S.C. § 548. *See Parker*, 2015 WL 4747536, at \*9; *Cook v. United States* (*In re Yahweh Ctr, Inc.*), 27 F.4th 960, 965 (4th Cir. 2022). As such, the Court finds that the Plaintiff has adequately pleaded the "reasonably equivalent value" element for the reasons already stated. But, as with the § 548 claim, the Plaintiff has failed to adequately plead that Randolph Health was undercapitalized during the four-year lookback period applicable to this cause of action. Again, the Plaintiff has alleged substantial net assets throughout that period and fails to allege that Randolph Health's negative cash flow led to an "inability to generate sufficient profits to sustain operations." *Parker*, 2015 WL 4747536, at \*9.

For these reasons, the Court finds the Plaintiff has failed to state a claim for relief under N.C. Gen. Stat. § 39-23.4(a)(2).

v. <u>Fifth Cause of Action: Avoidance under N.C. Gen. Stat. § 39-23.5(a)</u>

In its Fifth Cause of Action, the Plaintiff alleges that Management Fee Payments made to Cone Health within the four years before the Petition Date are constructively fraudulent transfers under N.C. Gen. Stat. § 39-23.5(a). This

provision is similar to § 39-23.4(a) and requires the same finding of "less than reasonably equivalent value," but replaces the undercapitalization element with an insolvency element. For the reasons previously stated, the Plaintiff adequately pleads the "reasonably equivalent value" and insolvency at the time of the alleged transfers.

Cone Health contends that the presumption of insolvency under § 39-23.2(b) is not triggered because the Plaintiff has not alleged with sufficient specificity that Randolph Health was unable pay debts as they became due during the extended four-year lookback period. Cone Health argues that the allegation that Randolph Health defaulted under the term loan with BOA is insufficient because the Plaintiff acknowledges that Cone Health helped Randolph Health obtain accommodations on its structured debt with BOA (Docket No. 49, p. 22).

While there are some gaps in these allegations, a plausible and properly favorable reading of the Plaintiff's allegations is that for some time before 2016 and continuously through February 27, 2017, Randolph Health defaulted and was unable to make timely payments to BOA (Docket No. 1, ¶ 40). Beginning on February 28, however, Cone Health began to guarantee Randolph Health's payment of amounts it owed to BOA, leading to a plausible inference that from that point on, either Randolph Health or Cone Health made payments to BOA as they became due.[12] These factual allegations about Randolph Health's

---

[12] The Plaintiff does not allege that Randolph Health subsequently relied on Cone Health to make payments to BOA under this guarantee agreement. Further, despite the allegation that Cone Health allowed the guarantee agreement to lapse after exiting sale negotiations in May 2018 (*see* Docket

inability to pay the BOA debt as it became due from at least the beginning of the four-year lookback period through February 27, 2017 are sufficient to trigger the presumption of insolvency under § 39-23.2(b) for purposes of the Motion (the "Presumptive Insolvency Period"). As with the presumption of insolvency granted for the claim under 11 U.S.C. § 547(f), the Court will not consider rebuttal evidence at this stage. *See Carn v. Heesung PMTech Corp.* (*In re SpecAlloy Corp.*), 579 B.R. 282, 296 (M.D. Ala. 2017).

For transfers made to Cone Health outside the Presumptive Insolvency Period but otherwise within the four-year lookback period, the Plaintiff has failed to adequately allege that Randolph Health became insolvent as a result of the transfers. As the Plaintiff has failed to plead that Randolph Health was insolvent at any point during the four-year lookback period, it logically follows that he has also failed to plead the alternative element that Randolph Health *became* insolvent in that period as a result of the alleged transfers. *See* § 39-23.5(a).

Accordingly, the Plaintiff has stated a claim for relief under N.C. Gen. Stat. § 39-23.5(a) with respect to Management Fee Payments that were made during the Presumptive Insolvency Period.

### vi. Sixth Cause of Action: Avoidance under 11 U.S.C. § 548

The Sixth Cause of Action is the first of three claims that are pleaded in the alternative in the event and to the extent that alleged transfers were not made on

---

No. 1, ¶¶ 26, 40), this allegation does not, by itself, imply that the debtor ceased to be able to make payments to BOA as they became due.

account of an antecedent debt. Here, the Plaintiff seeks to avoid the Cone Health and MCPS One Year Payments and any other alleged transfers made within two years before the Petition Date under § 548. For the reasons discussed above, the Plaintiff has not adequately pleaded the insolvency element with respect to the applicable two-year lookback period and fails to state a claim for relief under § 548.

    vii.  <u>Seventh Cause of Action: Avoidance under N.C. Gen. Stat. § 39-23.4(a)(2)</u>

The Plaintiff seeks to avoid the Cone Health and MCPS One Year Payments and any other alleged transfers made within four years before the Petition Date under N.C. Gen. Stat. § 39-23.4(a)(2) in the event and to the extent that alleged transfers were not made on account of an antecedent debt. For the reasons discussed above, the Plaintiff has not adequately pleaded the element of undercapitalization and fails to state a claim for relief under § 39-23.4(a)(2).

    viii.  <u>Eighth Cause of Action: Avoidance under N.C. Gen. Stat. § 39-23.5(a)</u>

The Plaintiff also seeks to avoid the Cone Health and MCPS One Year Payments and any other alleged transfers made within four years before the Petition Date under N.C. Gen. Stat. § 39-23.5(a), in the event and to the extent that alleged transfers were not made on account of an antecedent debt. For the reasons discussed above, the Plaintiff has adequately pleaded the "reasonably equivalent value" and insolvency elements with respect to transfers made to Cone Health during the Presumptive Insolvency Period.

However, the Plaintiff has not adequately pleaded that MCPS provided less than reasonably equivalent value for the alleged transfers. Unlike the allegations

surrounding Cone Health's breaches of contract, which lead to a plausible inference that Randolph Health was paying Cone Health more than what it truly earned under the MSA, the Complaint lacks any allegations comparing the amount of the subject transfers to MCPS to the quality or value of the services rendered by MCPS under the PSA. Apart from the conclusory statement that "Randolph Health received less than reasonably equivalent value from . . . MCPS in exchange for [the MCPS One Year Payments]" (Docket No. 1, ¶ 81), there are no factual allegations from which the Court can plausibly infer that MCPS failed to provide reasonably equivalent value in exchange for the transfers. Therefore, this claim fails with respect to MCPS.

### ix. <u>Eleventh Cause of Action: Breach of Fiduciary Duty</u>

In the Eleventh Cause of Action, the Plaintiff alleges that Cone Health breached its fiduciary duty to Randolph Health by (1) holding significant conflicts of interest, (2) acting in its own interest over that of Randolph Health, (3) failing to manage Randolph Health for the benefit of creditors and the "community at large," and (4) competing with Randolph Health "for market share, patients, staff and providers" (Docket No. 1, ¶ 112). Cone Health argues that the Plaintiff's claim fails because no fiduciary relationship or duty has been properly alleged.

A plaintiff asserting a claim of breach of fiduciary duty under North Carolina law must adequately plead that: (1) the defendant owed the plaintiff a fiduciary duty by a fiduciary relationship between them, (2) the defendant breached that fiduciary duty, and (3) the defendant's breach proximately caused injury to the

plaintiff. *Sykes v. Health Network Sols., Inc.*, 828 S.E.2d 467, 475 (N.C. 2019). A fiduciary relationship exists where "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.* at 475–76 (quoting *Dalton v. Camp*, 548 S.E.2d 704, 707 (2001)). A limited list of legal relationships will establish a fiduciary relationship "in law," *see King v. Bryant*, 795 S.E.2d 340, 349 (N.C. 2017) (finding fiduciary relationships in law include spouses, attorney-client, trustee-beneficiary, and partnerships), but a fiduciary relationship may also be established "in fact" when there is "confidence reposed on one side, and the resulting superiority and influence on the other." *Azure Dolphin, LLC v. Barton*, 821 S.E.2d 711, 725–26 (N.C. 2018) (quoting *Abbitt v. Gregory*, 160 S.E. 896, 906 (N.C. 1931)); *see also Parker v. McClain* (*In re Parker*), No. 13-00055-8, 2015 WL 4747536, at *4 (Bankr. E.D.N.C. Aug. 10, 2015) ("[F]or a fiduciary relationship to arise in fact, there must be 'control and domination.'" (quoting *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999))). For purposes of a motion to dismiss, a plaintiff may allege the existence of a fiduciary relationship in fact by pleading "detailed factual allegations" of a relationship of "trust and confidence." *Azure Dolphin*, 821 S.E.2d, at 726.

Factors giving rise to an inference of the required level of control and domination include "the degree of kinship between the parties, the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the 'servient' party entrusted the handling of its

30

business affairs to the 'dominant' party and placed trust and confidence in it." *Parker*, 2015 WL 4747536, at *4 (quoting *Smith v. GMAC Mortg. Corp.*, No. 5:06CV125, 2007 WL 2593148, at *6 (W.D.N.C. Sept. 5, 2007)). However, allegations of superior knowledge, trust, and one party's inexperience are insufficient to establish a fiduciary relationship. *See id.* (collecting cases). "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters.*, 505 F. Supp. 3d 570, 590 (M.D.N.C. 2020) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998)).

Meeting this threshold becomes more difficult when the parties are both businesses and the relationship in question arises from contractual obligations. Because a fiduciary must "never place [its] personal interest over that of the persons for whom [it] is obliged," a limitation which is "out of place in a relationship involving two business entities pursuing their own business interests," North Carolina courts are reluctant to over-extend the protections of this "extraordinary obligation" to such parties. *Broussard*, 155 F.3d at 348. The caselaw reflects that general contractual relationships do not typically rise to the level of fiduciary relationships, and that parties to a contract do not owe a special duty to one another beyond the terms of that contract—which may or may not include a negotiated provision establishing fiduciary duties. *Sykes*, 828 S.E.2d at 476; *see also*

*Intercollegiate Women's Lacrosse*, 505 F. Supp. 3d at 590–91 (dismissing breach of fiduciary duty claim where plaintiff failed to allege any special circumstances that heightened defendant's control beyond the contractual terms). In the same vein, North Carolina courts have found that "virtually all" managerial relationships involve "a certain level of confidence" that, without more, is inadequate to constitute a fiduciary relationship. *Dalton*, 548 S.E.2d at 708.

Here, Cone Health contends that the relationship between the parties was purely contractual, negotiated at arms-length, and did not introduce fiduciary duties. Cone Health points to the MSA's lack of any provision establishing a fiduciary relationship but inclusion of an integration clause (*see* Docket No. 1, Ex. A, § 25). And Cone Health argues that the MSA expressly provides for its role to be that of an "independent contractor" (Docket No. 1, Ex. A, § 14). Cone Health also notes that Randolph Health's board of directors held oversight power over Cone Health's role as a manager to Randolph Health (Docket No. 1, Ex. A, § 1). *See also* Docket No. 1, Ex. A, § 2 (stating the board of directors retain final approval power).

In response, the Plaintiff argues that Cone Health's many roles—manager, buyer, partner, and creditor—support a finding that Cone Health "held all the cards" in the relationship (Docket No. 52, ¶¶ 25–26). But in the Complaint, the Plaintiff appears to rely solely on the MSA to establish a fiduciary duty, alleging simply "[a]s the *manager and operator* of Randolph Health, Cone Health owed Randolph Health a fiduciary duty. Randolph Health reposed trust and confidence in

Cone Health which resulted in a superiority and influence by Cone Health on Randolph Health" (Docket No. 1, ¶ 111) (emphasis added).

While the Plaintiff alleges that Cone Health's role as a manager gave it control over Randolph Health, such an allegation without more fails to establish a fiduciary relationship. *See Dalton*, 548 S.E.2d at 708. Further, the conclusory allegations that Randolph Health "reposed trust and confidence in Cone Health which resulted in superiority and influence by Cone Health" (Docket No. 1, ¶ 111), and that Cone Health "obtained pervasive involvement in and control over Randolph Health" (Docket No. 1, ¶ 38), are akin to recitals of a necessary element of this cause of action, and do not surmount the fact that most, if not all, of Cone Health's duties to Randolph Health are alleged to have arisen out of the MSA contract.

Because the Plaintiff has failed to adequately plead this crucial element, the Court finds that he has failed to adequately state a claim of breach of fiduciary duty.

x. Twelfth Cause of Action: Constructive Fraud by a Fiduciary

Plaintiff alleges that Cone Health committed the tort of constructive fraud by a fiduciary by breaching its fiduciary duty to Randolph Health for its own benefit. A common element between this claim and a claim of breach of fiduciary duty is the existence of a relationship of trust and confidence, i.e., a fiduciary relationship. *See Governors Club, Inc. v. Governors Club Ltd. P'ship*, 567 S.E.2d 781, 787–88 (N.C.

Ct. App. 2002). For the reasons discussed above, the Plaintiff has failed to adequately plead a fiduciary relationship and the claim therefore fails.

     xi. <u>Thirteenth Cause of Action: Unfair and Deceptive Trade Practices</u>

In the Thirteenth Cause of Action, the Plaintiff alleges that Cone Health engaged in unfair or deceptive practices by its treatment of the Debtors, and that Cone Health used its "inequitable position of power" to gain a commercial advantage against the Debtors (Docket No. 1, ¶ 122). While the Plaintiff does not state the exact basis for this cause of action, the context—particularly the reference to market effects and the request for treble damages[13]—lead to a reasonable assumption that the Plaintiff is alleging violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1 *et seq.* ("UDTPA"). To state a valid claim under the UDTPA, a plaintiff must allege: (1) an unfair method of competition by the defendant or an unfair or deceptive practice (2) in or affecting commerce (3) that proximately caused actual injury to the plaintiff. *Ivey v. ES2, LLC (In re ES2 Sports & Leisure, LLC)*, 544 B.R. 833, 847 (Bankr. M.D.N.C. 2015); *see Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1022 (E.D.N.C. 2015). A defendant engages in an unfair method of competition when it unfairly uses its market power "to harm the competitive process and thereby harm consumers." *Exclaim Mktg.*, 134 F. Supp. 3d at 1022 (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 206 (4th Cir. 2002)). A practice is deceptive for purposes of the UDTPA if it has the capacity or tendency to deceive, *Mitchell v. Linville*, 557 S.E.2d

---

[13] *See* N.C. Gen. Stat. § 75-16 (allowing treble damages for violations of the North Carolina's unfair trade practices statute).

620, 623 (N.C. Ct. App. 2001), and is unfair if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," *Kelly v. Georgia–Pacific LLC*, 671 F. Supp. 2d 785, 798–99 (E.D.N.C. 2009) (citing *Branch Banking & Tr. Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992)). Regardless of the type of conduct in question, the plaintiff must allege "egregious or aggravating circumstances" to trigger liability under the UDTPA. *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001).

The intent of the UDTPA was to protect consumers from unscrupulous business practices, but North Carolina courts have extended its protections to businesses in appropriate situations. *Dalton*, 548 S.E.2d at 710. For example, business plaintiffs have been found to state valid causes of action when (1) they entered the marketplace as consumers and otherwise engaged in commercial dealings with the defendant, (2) the defendant was a competitor, or (3) the defendant's conduct had a negative effect on the consuming public. *See Exclaim Mktg.*, 134 F. Supp. 3d at 1020 (collecting cases). However, the requirement that the conduct must be "in or affect commerce" means that ordinary business disputes and matters of internal corporate management that have no tangible effect on the marketplace should not give rise to liability under the statute. *ES2*, 544 B.R. at 847–48. Finally, allegations of the mere breach of contract are insufficient to sustain a claim under the UDTPA. *See Rutledge v. Wells Fargo Bank, N.A.* (*In re Rutledge*), 510 B.R. 491, 508 (Bankr. M.D.N.C. 2014). To survive a motion to dismiss, a plaintiff must supplement such allegations with factual allegations of

"egregious or aggravating circumstances." *Id.* (citing *Harty v. Underhill*, 710 S.E.2d 327, 332 (N.C. Ct. App. 2011)).

Here, the Plaintiff's allegations satisfy the first element of this claim, namely, that Cone Health engaged in an unfair or deceptive trade practice. The Plaintiff alleges that Cone Health used its manager role and "unparalleled access to Randolph Health's financial and operation information" (Docket No. 1, ¶ 38) to unfairly compete with Randolph Health. Specifically, the Plaintiff alleges that Cone Health used its "position of power" to target specific physician groups and recruit them away from Randolph Health, as well as compete with Randolph Health for patients and staff (Docket No. 1, ¶¶ 35, 112, 122). The Plaintiff alleges that such practices deepened Randolph Health's physician shortage (Docket No. 1, ¶ 35), which leads to the plausible inference that the healthcare services Randolph Health offered to patients in Randolph County were adversely impacted (Docket No. 1, ¶ 123).

Additionally, the Plaintiff alleges that Cone Health used its involvement in and control over Randolph Health to obtain the LOI, thus becoming the only party that could negotiate an affiliation agreement with Randolph Health for a one-year period (Docket No. 1, ¶ 24). Together, these allegations lead to the plausible inference that Cone Health engaged in sufficiently egregious behaviors that constituted unfair methods of competition and deceptive trade practices. Finding these allegations to be sufficient to satisfy this element, the Court need not

determine whether Cone Health's alleged breaches of contract also constitute unfair trade practices.

The Defendant has not disputed any other element of this cause of action, and the Court finds that all other elements are met. Accordingly, the Plaintiff has stated a claim of unfair and deceptive trade practices.

### xii. Plaintiff's Motion for Leave to Amend

Having addressed the Defendants' Motion, the Court turns now to the Plaintiff's alternative request for leave to amend the Complaint. A plaintiff may amend its pleading with an opposing party's consent or the court's leave under Rule 15 of the Federal Rules of Civil Procedure, made applicable by Rule 7015 of the Federal Rules of Bankruptcy Procedure. Fed. R. Civ. P. 15(a)(2); *see Miller v. Elansari* (*In re Williams*), No. 21-02006, 2022 WL 1210070, at *4 (Bankr. M.D.N.C. Apr. 22, 2022). Rule 15 directs that courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Conti v. Coastal Warranty, LLC* (*In re NC & VA Warranty Co.*), 554 B.R. 110, 119 (Bankr. M.D.N.C. 2016) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). Amendment is deemed futile if, among other things, a proposed amended complaint fails to state a claim or if claims in the existing complaint suffer from fatal flaws of a legal, rather than factual, nature. *See Coastal Warranty*, 554 B.R. at 119;

*Elansari*, 2022 WL 1210070, at *5–6 (denying leave to amend due to plaintiff's failure to state a cognizable *Bivens* claim as a matter of law).

The Defendants oppose the granting of leave to amend because they believe amendment would be futile, but do not argue that amendment would be prejudicial. The Defendants contend that the Complaint's factual allegations cannot be plausibly construed in support of the claims and are inconsistent with "the record in this case" (Docket No. 53, p. 8).

First, at this stage, the Court will not consider purported inconsistencies with the record in the underlying bankruptcy case, such as the schedules or affidavits, as those facts and documents were not alleged or attached to the Complaint. *See Pham v. Deutsche Bank Nat. Tr. Co.*, 583 F. App'x 216, 217 (4th Cir. 2014). Second, the Court is inclined to grant leave to amend because the main issue with many of the Plaintiff's claims is inadequate factual pleading, not legal flaws. All of the claims asserted arise from cognizable causes of action, and it is reasonable to believe that with more adequate factual allegations, the Plaintiff could plead plausible claims for relief. *Cf. Coastal Warranty*, 554 B.R. at 130 (finding that inclusion of a "civil aiding and abetting" claim in proposed amended complaint would be futile because the cause of action was not recognized under the applicable state law). Accordingly, the Court will grant the Plaintiff leave to amend the Complaint.

CONCLUSION

This memorandum constitutes the Court's findings of fact and conclusions of law. An order will be entered contemporaneously with the entry of, and in accordance with, this memorandum opinion.

August 5, 2022

Lena Mansori James
United States Bankruptcy Judge